**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARC ANTHONY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-1381 |
| | ) | |
| OFFICER NICHOLAS J. KOLAT,<br>SGT. ROBERT JURICH, and<br>THE CITY OF PITTSBURGH, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Marc Anthony Johnson's ("Plaintiff") Second Amended Complaint (Docket No. 20), filed pursuant to 42 U.S.C. § 1983, alleges that Plaintiff's civil rights were violated by Defendants Officer Nicholas J. Kolat ("Officer Kolat") and Sgt. Robert Jurich ("Sgt. Jurich") (collectively, the "Officer Defendants"), and the City of Pittsburgh (the "City"), during a traffic stop and arrest of Plaintiff on August 3, 2022, and in course of the subsequent prosecution of charges against him. Presently before the Court is the Officer Defendants' Motion to Dismiss Second Amended Complaint (the "Officer Defendants' Motion") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and supporting brief (Docket Nos. 26, 27), the City's Motion to Dismiss Second Amended Complaint (the "City's Motion") pursuant to Rule 12(b)(6) and supporting brief (Docket Nos. 24, 25), and Plaintiff's two omnibus briefs filed in opposition to both motions to dismiss (Docket Nos. 30, 31). For the following reasons, the Officer Defendants' Motion and the City's Motion will both be granted.

## I. BACKGROUND

The Court presents herein an abbreviated version of the relevant facts, viewed in the light

most favorable to Plaintiff, as alleged in the Second Amended Complaint[1] and as set forth in certain additional documents that are properly considered by the Court in ruling on the Rule 12(b)(6) motions here. On August 3, 2022, Officer Kolat observed Plaintiff, who was known to Officer Kolat at the time, operating a motor vehicle in the City of Pittsburgh. (Docket No. 20, ¶¶ 9, 10). Based on his knowledge that Plaintiff's driver's license was suspended, Officer Kolat initiated a traffic stop of the vehicle that Plaintiff was operating. (*Id.* ¶ 10). Additionally, all windows on the vehicle that Plaintiff was operating, other than the front and rear windshields, had illegal tint obstructing the view into the vehicle. (Docket No. 1-2 at 10).[2]

During the traffic stop, Plaintiff refused to roll down his window so that Officer Kolat could see into the vehicle and speak with Plaintiff. (Docket No. 1-2 at 10). Plaintiff also called 911 to state that he felt unsafe. (Docket No. 20, ¶¶ 12, 13). At the conclusion of the interaction, Plaintiff was arrested and charged with a number of traffic violations and three criminal violations in a case in the Court of Common Pleas of Allegheny County, Criminal Division (at that court's Docket No. CP-02-CR-0000023-2023).[3] (*Id.* ¶¶ 14, 15; Docket No. 1-2; Docket No. 27-1). Specifically, Plaintiff was charged with the following counts:

---

[1] Plaintiff contends that this Court has subject matter jurisdiction over his claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). (Docket No. 20, ¶ 3).

[2] Attached as an exhibit to Plaintiff's original Complaint (Docket No. 1) is a copy of the Police Criminal Complaint (Docket No. 1-2) and Order of Sentence (Docket No. 1-3) that are related to the events at issue in Plaintiff's Complaint, First Amended Complaint (Docket No. 13), and Second Amended Complaint (Docket No. 20) filed in this case. In resolving a Rule 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records, and documents referenced in the complaint or that are essential to a plaintiff's claim that are attached to a defendant's motion. *See Colbert v. Mercy Behav. Health*, 845 F. Supp. 2d 633, 637 (W.D. Pa. 2012) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). By attaching these documents to his Complaint in this case, and by relying upon them in this case, Plaintiff has conceded that the Police Criminal Complaint and Order of Sentence (which are also public records) are essential to the claims raised in this case. Therefore, the Court may rely upon the Police Criminal Complaint and Order of Sentence in resolving Defendants' motions to dismiss.

[3] Here again, the publicly available docket sheet for Plaintiff's criminal case (including the docket sheet of the Magisterial District Judge (Docket No. 27-2), attached to the Officer Defendants' brief) may be considered by the Court in ruling on Defendants' motions to dismiss. *See Colbert*, 845 F. Supp. 2d at 637.

Count 1: 18 Pa. C.S.A. § 4905(a) – False Alarm to Agency of Public Safety (Misdemeanor 1);
Count 2: 18 Pa. C.S.A. § 5503(a)(4) – Disorderly Conduct (Summary);
Count 3: 18 Pa. C.S.A. § 5101 – Obstructing the Administration of Law or Other Governmental Function (Misdemeanor 2);
Count 4: 75 Pa. C.S.A. § 1501(a) – Driving Without a License (Summary);
Count 5: 75 Pa. C.S.A. § 1543(a) – Driving While Operating Privilege is Suspended or Revoked (Summary);
Count 6: 75 Pa. C.S.A. § 1786(f) – Operating a Vehicle Without Required Financial Responsibility (Summary);
Count 7: 75 Pa. C.S.A. § 1311(b) – Failing to Carry Registration (Summary);
Count 8: 75 Pa. C.S.A. § 4524(e)(1) – Improper Sunscreening (Summary);
Count 9: 75 Pa. C.S.A. § 4524(e)(1) – Improper Sunscreening (Summary);
Count 10: 75 Pa. C.S.A. § 4524(e)(1) – Improper Sunscreening (Summary); and
Count 11: 75 Pa. C.S.A. § 4524(e)(1) – Improper Sunscreening (Summary).

(Docket No. 1-3).

Plaintiff alleges that on March 21, 2024, as a result of his ongoing prosecution, his non-monetary bail was revoked and he was incarcerated at the Allegheny County Jail. (Docket No. 20, ¶ 19). Plaintiff further alleges that he was unlawfully detained pre-trial for approximately four months, from October 18, 2024, until February 20, 2025. (*Id.* ¶ 20). On January 29, 2025, Plaintiff pled guilty to Counts 2 and 5, no further penalty was imposed at either count during sentencing, and the state prosecution withdrew the remaining nine charges. (Docket No. 20, ¶¶ 21, 22; Docket No. 1-3).

Plaintiff filed his Complaint in this action on September 10, 2025. (Docket No. 1). The Complaint, filed pursuant to 42 U.S.C. § 1983, alleged several civil rights claims against Defendants. (*Id.* at 7-10). Because Sgt. Jurich was not served initially, on October 3, 2025, only Officer Kolat and the City filed motions to dismiss the Complaint. (Docket Nos. 8, 9, 10, 11). In response, Plaintiff filed his First Amended Complaint (Docket No. 13), and the motions to dismiss the Complaint were denied as moot (Docket No. 15). On October 21, 2015, Plaintiff filed a Motion for Leave to File Second Amended Complaint (Docket No. 17), which was granted (Docket No.

19). Plaintiff's Second Amended Complaint (now the operative complaint) was filed by the Clerk of Court on October 24, 2025, and alleges the following claims against Defendants:

Count I: First Amendment Retaliation (against Officer Kolat in his individual capacity);
Count II: Fourth Amendment Unlawful Seizure & False Arrest (against Officer Kolat in his individual capacity);
Count III: Fourth Amendment Malicious Prosecution (against Officer Kolat in his individual capacity);
Count IV: Supervisory Liability (against Sgt. Jurich in his individual and official capacities); and
Count V: Municipal Liability (against the City).

(Docket No. 20 at 9-12).

The Officer Defendants and the City have filed their motions to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6), the motions have been fully briefed by the parties, and they are ripe for decision.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6) of the Federal Rules of Civil Procedure

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)). Moreover, while "this standard does not require

'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

To review a complaint under this standard, the Court proceeds in three steps. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court notes the elements of a claim. *See id.* (citing *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *See id.* (citing *Iqbal*, 556 U.S. at 679). And finally, the Court assumes the remaining well-pleaded facts are true and assesses "'whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

**B. <u>Qualified Immunity</u>**

The qualified immunity doctrine "shield[s] government officials performing discretionary functions . . . 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not a "mere defense to liability" but rather it is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It is thus important to "'resolv[e] immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). In considering a claim of qualified immunity, a court must determine both whether the plaintiff has shown a violation of a constitutional right, and whether the right was "clearly established" at the time of the alleged constitutional violation. *See id.* (discussing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

**C. <u>*Pro Se* Pleadings</u>**

Although courts must generally construe *pro se* pleadings liberally pursuant to Rule 8(a)(2), courts are not required to accept legal conclusions disguised as statements of fact, unsupported conclusions, or unwarranted references. *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). "[A] pro se complaint must still contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wallace v. Fegan*, 455 F. App'x 137, 139 (3d Cir. 2011) (internal quotation marks and citation omitted). Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim," and "they cannot flout procedural rules – they must abide by the same rules that apply to

all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (internal citations omitted).

## III. DISCUSSION

As noted, Plaintiff brings his constitutional claims in this case pursuant to 42 U.S.C. § 1983, which does not create any substantive rights, but instead provides a remedy for deprivations of rights created by the Constitution of the United States or federal law. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Accordingly, "[t]o state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Plaintiff asserts here that the Officer Defendants and the City violated his rights under the First and Fourth Amendments to the Constitution of the United States.

### A. Count I: Retaliation – First Amendment

In Count I of the Second Amended Complaint, Plaintiff alleges that Officer Kolat's "decision to arrest Plaintiff and initiate serious criminal charges" against him was retaliatory. (Docket No. 20, ¶ 36). Plaintiff alleges that his 911 call was speech protected by the First Amendment, and that such speech was a substantial factor in Officer Kolat's decision to take adverse action against him. (*Id.* ¶ 37). In moving to dismiss, the Officer Defendants argue that Plaintiff's retaliation claim against Officer Kolat cannot proceed because it is barred by the applicable statute of limitations. (Docket No. 27 at 6-8).

"Section 1983 has no statute of limitations of its own, but borrows the statute of limitations from state personal-injury torts." *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018). In Pennsylvania, the statute of limitations for a § 1983 claim is two years. *See Kach v. Hose*, 589

F.3d 626, 634 (3d Cir. 2009); 42 Pa. C.S.A. § 5524. However, "[f]ederal law governs a cause of action's accrual date." *Kach*, 589 F.3d at 634. Under federal law, a claim accrues when a plaintiff "has a complete and present cause of action." *Gabelli v. SEC*, 568 U.S. 442, 448 (2013) (internal quotation marks and citation omitted); *see William A. Graham Co. v. Haughey*, 646 F.3d 138, 150 (3d Cir. 2011). Furthermore, "a claim accrues upon awareness of *actual injury*, not upon awareness that the injury constitutes a *legal wrong*." *New Castle Cnty. v. Halliburton NUS Corp.*, 111 F.3d 1116, 1125 (3d Cir. 1997) (emphasis in original); *see, e.g., Freeman v. New Jersey*, 788 A.2d 867, 880 (N.J. App. Div. 2002) (holding that equitable tolling did not apply in a § 1983 case because the plaintiffs "were aware of their injury and the principal actors involved at the time of the [traffic] stop").

Here, Plaintiff was aware of the injury at issue in Count I – his arrest and the initiation of charges against him in the Police Criminal Complaint – when Officer Kolat took such actions on August 3, 2022. (Docket No. 1-2). As Plaintiff has stated that such actions were taken in retaliation for his making the 911 call, the requirements for such claims to accrue were met that same day. Since Plaintiff's retaliation claim accrued on or about August 3, 2022, the statutory period for bringing his § 1983 claim expired two years later, on August 3, 2024. Because Plaintiff did not bring his retaliation claim in this action until over a year after that date, on September 10, 2025, such claim is barred by the statute of limitations. Accordingly, the retaliation claim at Count I will be dismissed, and because permitting amendment of such time-barred claim would be futile, the dismissal will be with prejudice. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018).

**B. <u>Count II: Unlawful Seizure & False Arrest - Fourth Amendment</u>**

Count II of the Second Amended Complaint alleges that Officer Kolat violated Plaintiff's

rights under the Fourth Amendment by unlawfully seizing and falsely arresting Plaintiff without probable cause to believe that he had committed the misdemeanor offenses of False Alarm or Obstruction of Law. (Docket No. 20 at 10-11). The Officer Defendants argue that, like the claim at Count I, the false arrest claim at Count II cannot proceed because Plaintiff failed to bring suit before the expiration of the two-year statute of limitations. (Docket No. 27 at 8-9).

A false arrest claim accrues "when a plaintiff 'appear[s] before the examining magistrate and [is] bound over for trial,' i.e., 'once the victim becomes held pursuant to [legal] process." *Geness v. Cox*, 902 F.3d 344, 354-55 (3d Cir. 2018) (quoting *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (emphasis omitted)). The Court of Appeals for the Third Circuit has held that "a preliminary arraignment in Pennsylvania connotes legal process." *Allen v. City of Philadelphia*, Civ. Action No. 19-1066, 2020 WL 134204, at *3 (E.D. Pa. Jan. 10, 2020) (citing *McCracken v. Wells Fargo Bank NA*, 634 F. App'x 75, 79 (3d Cir. 2015)).

Here, Plaintiff's preliminary arraignment took place on August 4, 2022, so the statute of limitations for Plaintiff's false arrest claim accrued on that date. (Docket No. 27-2 at 1). Plaintiff therefore had two years, or until August 4, 2024, to bring his false arrest claim against Officer Kolat. Instead, Plaintiff did not bring the present lawsuit until more than a year after that date, on September 10, 2025. Plaintiff's false arrest claim is thus barred by the applicable two-year statute of limitations.

Additionally, as the Officer Defendants argue, Plaintiff cannot invoke tolling principles because they do not apply here. (Docket No. 27 at 9). Generally, Pennsylvania law governing tolling principles applicable to the statute of limitations also governs § 1983 claims. *See Kach*, 589 F.3d at 639. Notably, Pennsylvania requires only "inquiry notice," or "knowledge of at least some form of significant harm and of a factual cause," to trigger the commencement of the

limitations period. *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 247 (Pa. 2021). In this case, Plaintiff alleges that he made the 911 call to create an independent record of the event, which was an exercise of his First Amendment right to petition the government for redress of grievances, and that Officer Kolat arrested him in direct retaliation for his protected speech. (Docket No. 20, ¶¶ 12, 13, 14). The Second Amended Complaint thus shows that, at the time of his arrest, Plaintiff had sufficient information to push him in the direction of investigating his legal remedies, such that he had inquiry notice of the alleged constitutional violation at that time.[4]

Accordingly, as Plaintiff's false arrest claim at Count II is barred by the statute of limitations, such claim will be dismissed. Because permitting amendment of this time-barred claim would be futile, the dismissal will be with prejudice. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d at 113.

### C. <u>Count III: Malicious Prosecution – Fourth Amendment</u>

In Count III, Plaintiff alleges against Officer Kolat a claim of malicious prosecution in violation of the Fourth Amendment. (Docket No. 20 at 11). Plaintiff avers that, as to the two misdemeanor charges in the Police Criminal Complaint (which were among the charges that were ultimately dropped in his underlying criminal proceeding), at no point did Officer Kolat have probable cause to believe that Plaintiff acted with the requisite criminal intent: (1) to make a knowingly false report (relevant to False Alarm to an Agency of Public Safety), or (2) to intentionally obstruct the administration of law (relevant to Obstructing Administration of Law). (*Id.* ¶¶ 17, 44). Plaintiff alleges that such misdemeanor charges were based entirely on his 911 call and his brief delay in complying with officer commands, which was caused by his state of

[4] Moreover, Plaintiff appears to concede in his opposition brief that his false arrest claim is time-barred by Pennsylvania's two-year statute of limitations. (Docket No. 30 at 1 (stating, "While the Plaintiff's Fourth Amendment False Arrest claim (Count II) likely accrued at the time of his initial arraignment in 2022 under *Wallace v. Kato*, his Malicious Prosecution claim is timely as a matter of law.")).

fear. (*Id.* ¶ 16).

In moving to dismiss Count III, the Officer Defendants argue that Plaintiff's malicious prosecution claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, if success in a § 1983 action would necessarily imply the invalidity of the plaintiff's conviction or sentence, a suit for damages or equitable relief is barred, unless the plaintiff can demonstrate that his conviction or sentence has been invalidated. *See id.* at 486-87. The Officer Defendants argue that Plaintiff's malicious prosecution claim in this case directly challenges the validity of his criminal conviction in his underlying criminal case, since Plaintiff cannot establish that the criminal proceeding was initiated without probable cause without also establishing the invalidity of the ensuing conviction, and that because Plaintiff entered a guilty plea in his criminal case, he cannot establish the absence of probable cause. (Docket No. 27 at 12). The Officer Defendants also argue that Plaintiff cannot establish the favorable termination of his criminal case since he pled guilty to two of the charges and has not taken any steps through the criminal litigation process to challenge the validity of his plea through motions or appeal. (*Id.* at 12-13).

In response, Plaintiff argues that he did not enter a guilty plea to the misdemeanor charges upon which his malicious prosecution claim is based, and that those two charges were withdrawn by the state (along with seven of the nine summary offenses) when he entered his guilty plea to the two other summary offenses. (Docket No. 20, ¶¶ 21, 22; Docket No. 31 at 2). Plaintiff asserts that his malicious prosecution claim based on the dropped charges is thus not barred by *Heck* since he was not convicted of those charges, and Officer Kolat's probable cause to initiate the criminal proceeding extended at most to the summary traffic offenses with which he was charged – not the misdemeanor charges. (Docket No. 30 at 2-3; Docket No. 31 at 2). Plaintiff also avers that the misdemeanor charges, which were not dropped for two and a half years, formed the basis of his

prolonged detention. (Docket No. 20, ¶¶ 18-22; Docket No. 30 at 2).

The Court agrees with Plaintiff that the presence of probable cause for one charge does not categorically bar a malicious prosecution claim based on another unsubstantiated charge. *See Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 298-99, 303-04 (3d Cir. 2024) (clarifying that, under *Chiaverini v. City of Napoleon*, 602 U.S. 556, 561, 562-63 (2024), the "any-crime" rule – under which a claim is not sustainable where at least one charge was supported by probable cause – governs false arrest claims, and not malicious prosecution claims, as "a person held pursuant to legal process may be subject to far longer detention, and each charge [a person] faces almost surely will place an additional burden on them). Therefore, Plaintiff's malicious prosecution claim, based on the allegation that Officer Kolat lacked probable cause as to the two misdemeanor charges (that were later withdrawn), is not categorically barred where the underlying prosecution was allegedly based on both valid and invalid charges.

Nevertheless, the Court must still determine whether, in this particular case, success as to Plaintiff's malicious prosecution claim would necessarily imply the invalidity of his underlying conviction on other charges. *See, e.g., Olick v. Pennsylvania*, 739 F. App'x 722, 725-26 (3d Cir. 2018) (citing *Gibson v. Superintendent*, 411 F.3d 427, 447-49 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181 (3d Cir. 2010)), which held that a determination as to whether *Heck* applies to a Fourth Amendment claim requires a case-by-case fact-based inquiry as to whether each claim, if successful, would imply the invalidity of the conviction or sentence; and noting that, for the plaintiff to prevail on his false arrest and false imprisonment claims, he would have to do so in a way that respected the validity of his extant harassment conviction).

In order to prevail here on a malicious prosecution claim brought under § 1983, Plaintiff

must prove that:

> (1) the defendant[] initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant[] acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). To satisfy the second requirement, a favorable termination, Plaintiff must show that "the criminal prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 49 (2022). The favorable termination need not, however, include an affirmation of the plaintiff's innocence. *See id.*

As set forth above, Defendants argue here that since Plaintiff pled guilty in his underlying criminal case (*i.e.*, the prosecution resulted in a conviction), he is therefore unable to establish the favorable termination of his case (*i.e.*, that his case ended without a conviction). (Docket No. 27 at 12). Nevertheless, Plaintiff argues that because his malicious prosecution claim in this case is based on the two misdemeanor charges that were ultimately withdrawn and not charges to which he pled guilty in his criminal case, his success on the malicious prosecution claim here would not invalidate his conviction in his underlying case. (Docket No. 31 at 2).

Notably, the allegations regarding the criminal case in the Second Amended Complaint, along with the Order of Sentence in the criminal case, indicate that Plaintiff entered his guilty plea to two of the criminal charges on the same day that the state prosecution withdrew the remaining nine criminal charges, but there is no averment indicating whether the withdrawal of certain charges and Plaintiff's guilty plea as to other charges was entered in accordance with a plea agreement or compromise between Plaintiff and the prosecution. (Docket No. 20, ¶¶ 21, 22; Docket No. 1-3). However, "[e]valuating a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *United States*

*ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 177 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679)). Upon consideration of all the allegations in the Second Amended Complaint, this judicial officer's experience and common sense indicates that – as Plaintiff pled guilty to certain charges on the same day that the prosecution withdrew the remaining charges (all of which is also reflected in the Order of Sentence (Docket No. 1-3; Docket No. 27-1) that was entered on the criminal case's docket that day) – such actions appear to have been taken pursuant to a plea agreement or compromise between Plaintiff and the prosecution in order to resolve the case. This is the only reasonable inference that can be drawn from the averments in the Second Amended Complaint.

Furthermore, a number of courts have found that charges that were dismissed or otherwise not prosecuted as a part of a guilty plea are not considered to be "favorably terminated." *See, e.g., Thomas v. Weiss*, Civ. No. 21-cv-14554, 2024 WL 2830662, at *10 (D.N.J. June 4, 2024) (citing Third Circuit cases finding that malicious prosecution actions premised on dismissed charges as part of a guilty plea or agreement with the prosecution were not "favorably terminated"; and explaining that, by pleading guilty, the plaintiff could not "show the criminal proceedings against him ended favorably—that is, without a conviction," and that a charge dismissed as part of a plea agreement did not change the outcome); *accord Burnam v. Weld Cnty. Sheriffs*, Civ. Action No. 23-cv-00151, 2024 WL 1051949, at *11 (D. Colo. Mar. 11, 2024) (listing cases analyzing malicious prosecution claims following *Thompson*, and concluding that "the weight of authority" finds that "the disposal of a criminal proceeding pursuant to a plea agreement, wherein a defendant agrees to plead guilty to some charges in exchange for the dismissal of others" does not constitute a "favorable termination"). Furthermore, as the Third Circuit has explained, "[a] prosecutor's decision to drop charges as part of a compromise with the accused does not amount to a 'favorable termination' of state proceedings for purposes of permitting the accused to maintain a subsequent

claim under § 1983 for malicious prosecution."[5] *Marable v. West Pottsgrove Twp.*, 176 F. App'x 275, 281 n.1 (3d Cir. 2006). Similarly, the Court finds here too that, since Plaintiff's entry of a guilty plea to certain charges and the prosecution's withdrawal of the remaining charges clearly appear to have occurred as a result of a plea agreement or compromise between the parties in the underlying criminal case, that case resulted in a conviction, which does not constitute a "favorable termination" for Plaintiff for purposes of establishing a malicious prosecution claim under § 1983 in this case.

Accordingly, the Court finds that Plaintiff cannot predicate his malicious prosecution claim on the criminal charges that were withdrawn in his underlying criminal case because, when viewed in conjunction with his guilty plea to other charges in that case, the criminal proceeding was not terminated in his favor. *See Heck*, 512 U.S. at 486-87. Furthermore, since Plaintiff cannot demonstrate that his conviction or sentence in his underlying criminal case has been invalidated, his malicious prosecution claim at Count III is not cognizable and must be dismissed. *See id.* However, as the Court finds that amendment of Plaintiff's malicious prosecution claim would not be futile, the dismissal will be without prejudice.

**D. <u>Count IV: Supervisory Liability</u>**

At Count IV of the Second Amended Complaint, Plaintiff alleges that Sgt. Jurich should be held liable for the alleged constitutional violations committed by Officer Kolat under a theory of supervisory liability, arising from Sgt. Jurich's supervisory role over Officer Kolat on August 3, 2022, when Officer Kolat arrested Plaintiff. (Docket No. 20, ¶¶ 47-48). "A *Monell*[6] or

---

[5] The Third Circuit noted in *Alburg v. Jones*, No. 21-2580, 2023 WL 2823895, at *3 n.13 (3d Cir. Apr. 7, 2023), that "*Thompson* did not address whether a proceeding can ever terminate in a plaintiff's favor when the prosecution did not end without a conviction on every charge."

[6] *See Monell v. Department of Soc. Servs. of New York*, 436 U.S. 658 (1978).

supervisor liability claim is properly viewed as a § 1983 claim (or as a component of a § 1983 claim), and it is subject to the same two-year statute of limitations as the underlying § 1983 tort." *Waselik v. Township of Sparta*, Civ. No. 16-4969, 2017 WL 2213148, at *5 (D.N.J. May 18, 2017). As discussed, *supra*, the claims of First Amendment Retaliation and False Arrest are both barred by the statute of limitations so, to the extent Plaintiff's supervisory liability claim is based on those torts, it is time-barred as well. To the extent Plaintiff's supervisory liability claim is based on his claim of malicious prosecution, that claim against Officer Kolat is being dismissed without prejudice for the reasons discussed, *supra*.

Additionally, the Court notes that Plaintiff's supervisory liability claim at Count IV is brought against Sgt. Jurich in both his individual and official capacities. (Docket No. 20, ¶ 7). To the extent Count IV seeks to impose personal liability on Sgt. Jurich based on the alleged malicious prosecution of Plaintiff by Officer Kolat, an individual capacity lawsuit seeks to impose personal liability upon an official for actions that the official took under color of state law. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). In a § 1983 suit, however, "the term 'supervisory liability' is a misnomer," as each government official is only liable for his or her own misconduct. *Ashcroft v. Iqbal*, 556 U.S. at 677. Therefore, to the extent Plaintiff's individual capacity supervisory liability claim against Sgt. Jurich is based on malicious prosecution under § 1983, such claim is barred by *Heck* for the same reasons that Plaintiff's malicious prosecution claim against Officer Kolat at Count III is barred by *Heck*. *See* discussion, *supra*. Accordingly, to the extent Plaintiff's supervisory liability claim at Count IV is brought against Sgt. Jurich in his individual capacity, that claim will be dismissed, without prejudice, for failure to state a claim.

To the extent Plaintiff brings his supervisory liability claim at Count IV against Sgt. Jurich in his official capacity – based on an alleged custom of tolerating retaliatory arrests for protected

speech, and an alleged failure to train officers on the constitutional limits of their authority and the probable cause standards necessary to avoid retaliatory arrests – such claim is redundant of Plaintiff's substantially similar claim alleged against the City (Sgt. Jurich's employer) at Count V, Municipal Liability under *Monell*.[7] (Docket No. 20, ¶¶ 48, 50, 51). *See, e.g.*, *Corlew v. Honesdale Borough*, Civ. Action No. 3:22-cv-01990, 2024 WL 1051980, at *3 & n.11 (M.D. Pa. Mar. 11, 2024) (citing various cases discussing dismissal of individual capacity claims that are redundant or duplicative of substantially identical claims against individuals' employers). Accordingly, to the extent Plaintiff alleges a claim of supervisory liability at Count IV against Sgt. Jurich in his official capacity, the Court finds that it is duplicative of Plaintiff's *Monell* claim against the City at Count V and, as such, the official capacity claim against St. Jurich at Count IV will be dismissed with prejudice pursuant to the court's inherent authority to control its docket and avoid duplicative claims.

**E. <u>Qualified Immunity</u>**

Although the Court is dismissing Plaintiff's claims against the Officer Defendants, the Court will still consider the Officer Defendants' argument that they are entitled to qualified immunity in this matter. *See Roth v. City of Hermitage*, 709 F. App'x 733, 736 (3d Cir. 2017) ("Failing to consider the qualified immunity defense before dismissing without prejudice on the merits was error because the District Court failed to resolve a motion asserting qualified immunity . . . at the earliest possible stage in the litigation." (internal quotation marks and citation omitted)). In addition to arguing that Plaintiff fails to state a cognizable claim under Rule 12(b)(6), the Officer

[7] Notably, Plaintiff may agree with this conclusion, as he combines certain allegations in his Second Amended Complaint under a heading entitled, "ALLEGATIONS OF SUPERVISORY AND MUNICIPAL LIABILITY" (Docket No. 20 at 6), he combines his discussion of such claims in one of his opposition briefs (Docket No. 30 at 4-5), and he addresses only the sufficiency of his *Monell* claim at Count V (and does not address such official capacity supervisory liability claim at Count IV) in his other opposition brief (Docket No. 31 at 3).

Defendants contend that they are entitled to qualified immunity for their actions at this stage of the litigation because Plaintiff's claims do not establish the violation of any clearly established rights. (Docket No. 27 at 16-18). However, because the Officer Defendants raise this argument in a somewhat cursory way and do not fully develop it with citation to appropriate case law, nor have they filed a reply brief, and since Plaintiff will be given leave to file a third amended complaint, the Court will address qualified immunity only briefly at this time.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A federal right is clearly established for qualified immunity purposes if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Additionally, qualified immunity must be assessed in the context of each individual defendant's specific conduct, including "'an analysis of the facts adduced concerning the conduct of the official'" claiming immunity. *Griffin-El v. Beard*, 411 F. App'x 517, 519 (3d Cir. 2011) (quoting *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990)).

A Court may find that a municipal official is entitled to qualified immunity at the motion to dismiss stage if "(1) the facts alleged show the [official's] conduct did not violate a constitutional right, or (2) the right violated was not clearly established in light of the specific context of the case." *Taylor v. Rosa*, 856 F. App'x 376, 378 (3d Cir. 2021) (citing *Reedy v. Evanson*, 615 F.3d 197, 223–24 (3d Cir. 2010)). Thus, "qualified immunity should only be granted on a motion to dismiss when it is 'established on the face of the complaint.'" *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 126 (D.N.J. 2017) (quoting *Thomas v. Independence Twp.*, 463 F.3d 285,

291 (3d Cir. 2006)).

Here, the facts alleged in the Second Amended Complaint do not make clear that the Officer Defendants' conduct did not violate a constitutional right, or that such right was not clearly established. Because the Second Amended Complaint does not show that the Officer Defendants' actions did not violate a clearly established constitutional right, dismissal on qualified immunity grounds is premature. *See Thomas*, 463 F.3d at 291 (a dismissal based on qualified immunity will be upheld "'only when the immunity is established on the face of the complaint'" (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001))). Additionally, and mindful of Plaintiff's pro se status, the Court will permit Plaintiff to amend his Second Amended Complaint. Therefore, if Plaintiff chooses to file a third amended complaint, he should provide a more definite statement of his claims, and the specific right at issue here, so that the qualified immunity issue may be resolved expeditiously and without "subjecting the [i]ndividual [d]efendants who may be immune from suit to needless discovery and the other burdens of litigation." *Id.* at 299.

Accordingly, at this juncture, the Court will decline to grant the Officer Defendants' motion to dismiss to the extent it is based on qualified immunity grounds. *See Debrew v. Auman*, 354 F. App'x 639, 642 (3d Cir. 2009) (vacating order granting motion to dismiss certain claims on qualified immunity grounds because the sparse complaint "failed to disclose whether the defendants' actions did not violate a clearly established constitutional right" and therefore "dismissal on qualified immunity grounds was premature" (citing *Thomas*, 463 F.3d at 291)); *see also Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (cautioning against deciding qualified immunity without a developed factual record). However, given that the Court is granting the Officer Defendants' motion to dismiss Plaintiff's claims pursuant to Rule 12(b)(6), the Officer Defendants are free to raise a qualified immunity argument, if appropriate, in response to a third

amended complaint if Plaintiff chooses to re-allege claims against them.

### F. Count V: Municipal Liability (*Monell*)

In Count V, Plaintiff alleges that the City is liable under the theory of municipal liability set forth in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), for the violations of his constitutional rights as alleged in the Second Amended Complaint. (Docket No. 20, ¶¶ 49-51). In moving to dismiss Count V, the City argues that it cannot be held liable under *Monell* because Plaintiff has failed to establish an underlying violation of his constitutional rights by the Officer Defendants. (Docket No. 25 at 5). *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that if municipal employees "inflicted no constitutional injury, . . . it is inconceivable that [the municipality] could be liable"); *Mulholland v. Government of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that if there is no [constitutional] violation in the first place, there can be no derivative municipal claim.").

As discussed, *supra*, Plaintiff's claims at Counts I-IV alleging claims of constitutional violations against the Officer Defendants will all be dismissed, mostly for failure to state a claim upon which relief can be granted. Therefore, because Plaintiff has failed to state a claim alleging a violation of his constitutional rights by the Officer Defendants, he has also failed to state a claim against the City of municipal liability under *Monell*. Accordingly, Plaintiff's *Monell* claim against the City at Count V of the Second Amended Complaint will also be dismissed pursuant to Rule 12(b)(6). Because the Court finds that amendment of Count V would not be futile, however, the dismissal will be without prejudice.

## IV. CONCLUSION

For the reasons stated, the Officer Defendants' Motion to Dismiss Second Amended Complaint and the City's Motion to Dismiss Second Amended Complaint will both be granted.

Plaintiff's claims at Counts I, II, III, IV (individual capacity), and V will be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff's official capacity claim against Sgt. Jurich at Count IV will be dismissed pursuant to the Court's inherent authority to control its docket and avoid duplicative claims. Counts I, II, and IV (official capacity) will be dismissed with prejudice as amendment of those claims would be futile, and Counts III, IV (individual capacity), and V will be dismissed without prejudice to amendment.

An appropriate Order follows.

Dated: August 18, 2026

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record
Marc Anthony Johnson (via U.S. Mail)